United States District Court
Southern District of Texas
**ENTERED**
March 14, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DELEESE ALLEN, Individually and §
as Representative of the Estate §
of Karalee Alaine Williams, §
                                §
            Plaintiff, §
                                §
VS. §   CIVIL ACTION H-16-1428
                                §
WAL-MART STORES, LLC, Gregory §
Mouton, Loretta Brewer-Winter, §
and Shanda Hutton, §
                                §
            Defendants. §

### OPINION AND ORDER

Pending before the Court in the above referenced cause, originally filed in the 11th District Judicial Court of Harris County, Texas seeking an order to compel the preservation of physical and testimonial evidence, removed on diversity jurisdiction, and now alleging negligence and negligence per se in causing the wrongful death of Karalee Alaine Williams ("Williams") and the sale of unreasonably dangerous products, are the following motions: (1) Plaintiff Deleese Allen's ("Allen's") motion to remand (instrument #14) on the grounds that the removal was improper as there is no complete diversity[1]; (2) Defendant Wal-Mart

---

[1] Under the complete diversity rule of *Strawbridge v. Curtiss*, complete diversity is lacking unless "*each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).
    When a plaintiff with a claim against diverse and nondiverse parties, sues only a diverse defendant in state court but, after removal, joins a nondiverse defendant, 28 U.S.C. § 1447(e), added

Stores Texas, LLC's[2] first amended 12(b)(6) motion to dismiss for
failure to state a claim upon which relief can be granted (#16),
which superseded #2 and #3 after Plaintiff filed an amended
complaint (#6); (3) Wal-Mart's objection to and motion to strike
joinder (#17); and (4) Defendants Shanda Hutton ("Hutton"), Loretta
Brewer-Winter ("Brewer-Winter"), and Gregory Mouton's ("Mouton's")
12(b)(6) motion to dismiss for failure to state a claim upon which
relief can be granted (#18).  The same issues overlap in the
various motions.

In her current complaint (#6 at p. 1), Allen, the mother of
deceased Karalee Alaine Williams, states that Allen "has made
application to be the representative of the Estate of Karalee
Williams, but the Probate Court of Harris County has yet to rule on
the application.  The Estate itself is not a legal entity, and may
or may not become a party to this action; it currently is not."
Moreover she claims that she was the only Plaintiff in the action
at the time of removal.  Thus the Court treats Allen as an

---

by the Judicial Improvements and Access to Justice Act of 1988,
federal district courts are authorized to use their discretion to
permit or deny a diversity plaintiff's joinder of a nondiverse
defendant after removal and, if it allows the joinder, to remand
the whole action to state court.

[2] The Court would point out that in the various documents in
the file there is no consistency in the spelling of WalMart in so
far as use of a hyphen goes, so no significance should be
attributed to the hyphen's presence or absence. For clarity, the
Court spells the word without a hyphen.

individual and as the sole plaintiff.[3]

### Plaintiff's Allegations

Allen alleges that on Sunday, April 10, 2016, Williams, her daughter, entered WalMart Store 2439, 8700 North Highway 246, Baytown, Texas 77523, around 10:30 p.m. and purchased seven cans of "abusable volatile chemical in the form of compressed inhalant," the legitimate use of which was to clean computer keyboards, along with a towel.  Allen explains that a towel can be used in the process of "huffing," i.e., in inhalant abuse and by the person inhaling to clean himself if he loses bowl or bladder control.  #6 at pp. 6-7 & n.3.  The next morning at 12:45 a.m. Williams again entered the store after having soiled herself.  She bought more cans of abusable volatile chemical and paraphernalia in the form of compressed inhalant and told the checkout person that she had "had a seizure in the parking lot." *Id.* at 7.  She then returned to the parking lot and inhaled the chemicals.  At 3:45 a.m. Williams came back into the store, naked from the waist down, obtained a towel, and wrapped it around herself.  She was observed by several employees, who told others.  Williams again told an employee that she had had a seizure in the parking lot.  An employee believed to

---

[3] Should the Probate Court grant leave to the Estate to be a party to this suit, it would be governed by the amendment of 28 U.S.C. § 1332(c) by the Judicial Improvements and Access to Justice Act of 1988, which now provides in relevant part, "[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."

be Defendant Hutton offered her a sundress. Williams bought additional cans of compressed air and exited to the parking lot to continue using the inhalant. The complaint asserts that by this time any reasonable person would realize that Williams was mentally ill and continuing to inhale or ingest into her body an abusable volatile chemical in violation of Section 485.031 of the Health and Safety Code.[4] Plaintiff accuses Hutton, Brewer-Winter, and Mouton of knowingly delivering or selling inhalant paraphernalia to Williams when they knew that she intended to inhale, ingest, apply, use or otherwise introduce the volatile chemical into her body in violation of Section 485.031.

On her fourth entry into the store, still before dawn on April

---

[4] Section 485.031 states,

(a) A person commits an offense if the person inhales, ingests, applies, or possesses an abusable volatile chemical with intent to inhale, ingest, apply, or use the chemical in a manner:

    (1) contrary to directions for use, cautions, or warnings appearing on a label of a container of the chemical; and

    (2) designed to:

        (A) affect the person's central nervous system;
        (B) create or induce a condition of intoxication, hallucination, or elation; or
        (C) change, distort or disturb the person's eyesight, thinking process, balance, or coordination.

(b) An offense under this section is a Class B misdemeanor.

11, 2016, it is believed that she purchased more inhalant and maybe more towels, and again returned to the parking lot and continued her abuse of the chemicals and paraphernalia. Her fifth visit to the store came after dawn that day, again to buy more cans of abusable volatile chemicals and paraphernalia and perhaps more towels. The sixth, seventh, and eighth visits that occurred during that day were for the same purpose, with the sellers knowing Williams was going to abuse the chemicals. At 1:20 a.m. on April 12, 2016 Williams made her ninth and last visit to the store for additional tools of inhalant abuse. She returned to the parking lot, where she died in her vehicle from the effects of using the chemicals and paraphernalia provided to her by Hutton, Mouton, Brewer-Winter, and others. It was not until Wednesday, April 13, 2016 at 1:20 a.m. that authorities were notified of her partially rigid body.

The complaint states that WalMart has been aware of the hazards and dangers of inhalant abuse for a long time. In 2007 the parents of a California teenager, who died after inhaling an aerosol dust remover without adequate warnings, sued WalMart Stores, Inc. for selling the dust remover, which produces a euphoric state when inhaled. The trend of inhaling dust remover products, called "dusting," had been reported by the media since at least 1996 and resulted in many lawsuits. In 2012, James W. Monticelli sued WalMart and IQ Products after his son purchased

forty cans of dust remover during one month and died of inhalant abuse. In 2014 Roger Taft Collins purchased several cans of air duster product from a WalMart store in Mont Avery, North Carolina and used them in its parking lot, where his body was found. Thus WalMart certainly knew of the hazards of abusable volatile chemicals and the Texas statute prohibiting providing sale of such chemicals to someone who was going to abuse them. The complaint charges that Hutton (resident of Liberty County, Texas), Mouton (resident of Chambers County, Texas) and Brewer-Winter (resident of Harris County, Texas), and others in the WalMart 2439 store knew, as would any reasonably prudent person, that Williams was abusing the chemicals by the sheer volume and the number of visits she made to the store in the course of approximately a single day, her physical appearance, and the fact that the quantities purchased could not reasonably be construed as for any purpose other than illegal use. It further asserts that Defendants knew or should have known of the common law duty not to provide a minor or mentally impaired adult with dangerous instrumentalities or products like abusable volatile chemicals that cause harm. Furthermore Williams exhibited many of the symptoms of inhalant abuse, which include losing touch with surroundings, loss of self-control, violent behavior, nausea, unconsciousness, giddiness, loss of inhibition (as in her appearance naked from waist down), loss of appetite and hallucinations.

Allen also contends, upon information and belief, some or all of the unreasonably dangerous, abusable volatile chemicals were manufactured, sold, and placed into the stream of commerce by seller IQ Products Company ("IQ), a foreign corporation with its principal place of business in Houston, Texas, and designed, manufactured, marketed, and a 3M brand of dust remover sold by 3M, and were the producing cause of Williams' death.  IQ, 3M, and WalMart as sellers have liability under law for products liability for the design, manufacture, marketing and sale of an unreasonably dangerous product, and, under the law of negligence,[5] for breaching their duty of ordinary care to the purchaser of such products. Allen also names Defendant 3M Co. and identifies its principal place of business in Minnesota, but alleges no facts about it.

---

[5] As opined by the appeals court in *In re Butt*, 495 S.W. 3d 455, 463 (Tex. App.--Corpus Christi 2016),

> The existence of a duty is a threshold inquiry in any negligence case. *See Kroger Co. v. Elwood*, 197 S.W. 3d 793, 794 (Tex. 2006); *Sw. Elec. Power Co. v. Grant*, 73 S.W. 3d 211, 223 (Tex. 2002).  Whether a duty exists is a question of law for the court.  *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W. 3d 170, 181 (Tex. 2004); *Tex. Home Mgmt., Inc v. Peavy*, 89 S.W. 3d 30, 33 (Tex. 2002); *SmithKline Beecham Corp. v. Doe*, 903 S.W. 2d 347, 351 (Tex. 1995).  This determination is made "from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W. 2d 523, 525 (Tex. 1990); *see Centeq Realty, Inc. v. Siegler*, 899 S.W. 2d 195, 197 (Tex. 1995); *Bird v. W.C.W.*, 868 S.W. 2d 767, 769 (Tex. 1994)("Whether a legal duty exists under a set of facts is a question of law.").

Apparently neither IQ nor 3M has been served nor appeared.

Alternatively, Defendants failed to provide proper and adequate warnings regarding all the adverse effects associated with the use of "CleanSafe" and 3M dust remover and their severity, including risk of cardiovascular injury, brain injury, and sudden death.  The dust remover was misused in a reasonably foreseeable way as an inhalant, resulting in serious injuries to Williams that caused her death.  Defendants knew or should have known at the time that the dust remover was defective, that people foreseeably would misuse it, and that it exposed them to an increased risk of severe injury or death.

### Applicable Law Regarding Removal

In removing a case from state court, the federal district court must resolve all contested fact issues and ambiguities of state law in favor of the plaintiff and remand. *Gasch*, 491 F.3d at 281.  The Fifth Circuit explains, since "'the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns.'  The removal statute is therefore to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281-82, *quoting Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365-66 (5th Cir. 1995).  Furthermore, "[i]f at any time before final judgment it appears that the district court lacks jurisdiction, the case shall be remanded." 18 U.S.C. § 1447(c).

Under 28 U.S.C. §1332, a defendant may remove a case if there is (1) complete diversity of citizenship and (2) the amount in controversy is greater than $75,000, exclusive of interests and costs.   Under 28 U.S.C. § 1441(b), when original federal jurisdiction is based on diversity, a defendant may remove a state court civil action only "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

The doctrine of improper joinder, or fraudulent joinder,[6] prevents defeat of federal removal jurisdiction premised on diversity by the presence of an improperly joined, non-diverse defendant. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).  Where improper joinder is shown by the removing party, the citizenship of the improperly joined party is totally disregarded in determining the court's subject matter jurisdiction. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2003).

Improper joinder may be established by the removing party showing (1) actual fraud in the plaintiff's pleading of jurisdictional facts or (2) an inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court. *Gasch*, 491 F.3d at 281; *Smallwood*, 385 F.3d at 573.

---

[6] The Fifth Circuit prefers the term "improper joinder" to "fraudulent joinder" because it is more consistent with the statutory language in 28 U.S.C. §§ 1141 and 1332. *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 and 572-73 (5th Cir. 2004)(*en banc*), *cert. denied*, 544 U.S. 992 (2005).

Defendants claiming  improper joinder based on the second type bear a heavy burden of showing that there is no possibility of recovery by the plaintiff against the in-state defendant, i.e., in other words that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *Smallwood*, 385 F.3d at 576 ("[T]here is no possibility of recovery by the plaintiff against an in-state defendant . . . stated differently mens that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant. To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").  A "reasonable basis" means more than a mere a hypothetical basis. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999)("whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery").

To determine whether a plaintiff has a "reasonable basis for recovery under state law, the court may "conduct a Rule 12(b)(6)-type analysis." *Smallwood*, 385 F.3d at 573; *Anderson v. Georgia Gulf Lake Charles*, 342 Fed. Appx. 911, 915 (5th Cir. 2009).  First the court should look at the pleadings to determine whether the allegations state a claim under state law against the in-state

defendant.  *Smallwood*, 385 F.3d at 573.  If the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the court may look beyond the pleadings and consider summary judgment-type evidence. *Georgia Gulf*, 342 Fed. Appx. at 915-16.  Discovery should be restricted and the summary inquiry should be limited to identifying "discrete and undisputed facts that would bar a plaintiff's recovery against an in-state defendant; anything more risks 'moving the court beyond jurisdiction and into the resolution of the merits . . . .'"  *Id.* at 916, *quoting Smallwood*, 385 F.3d at 573-74.  A defendant may submit and the court may consider affidavits and deposition transcripts in support of the defendant's removal petition. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  Furthermore, where the reasons for finding that there is no reasonable basis for recovery against the in-state defendant would also dispose of all claims against the diverse defendants, the entire case should be remanded because "there is no improper joinder; there is only a lawsuit lacking merit."  *Id.* at 574.

Moreover, "the existence of even a single valid cause of action against the in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Grey v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 412 & n.11 (5th Cir. 2004)(and cases cited therein).

Where the nondiverse parties were joined ***after*** the case was

removed, not before, the standard is not whether the new parties were fraudulently joined, but that the Court, when "confronted with an amendment to add a nondiverse nonindispensable party, should use its discretion in deciding whether to allow that party" to be joined. *Hensgens v. Deere & Co.*, 833 F.3d 1179, 1182 (5th Cir. 1987), *appeal after remand*, 869 F.2d 879 (5th Cir. 1989), *cert. denied*, 493 U.S. 851 (1989); *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 768-69 (applying *Hensgens* to an amendment adding nondiverse nonindispensable party and prohibited joinder because it found her purpose was to defeat diversity).

> Because the court's decision will determine the continuance of its jurisdiction, the addition of a nondiverse party must not be permitted without consideration of the original defendant's interest in the choice of forum. The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment. . . . In this situation, justice requires that the district court should consider a number of factors to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits. For example, the court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted. If it permits the amendment of the nondiverse defendant, then it must remand to the state court. If the amendment is not allowed, the federal court maintains jurisdiction.

*Id.*

## Standard of Review

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). The plaintiff's legal conclusions are not entitled to the same assumption. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

-13-

action"). *Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009), *quoting In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.  Dismissal is appropriate when the plaintiff fails to allege "'enough facts to state a claim to relief that is plausible on its face'" and therefore fails to "'raise a right to relief above the speculative level.'" *Montoya*, 614 F.3d at 148, *quoting Twombly*, 550 U.S. at 555, 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving

"a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b).  *Iqbal*, 556 U.S. at 678.  The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ."  *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

Dismissal under Rule 12(b)(6) is proper not only where the plaintiff fails to plead sufficient facts to support a cognizable legal theory, but also where the plaintiff fails to allege a cognizable legal theory.  *Kjellvander v. Citicorp*, 156 F.R.D. 138, 140 (S.D. Tex. 1994), *citing Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 591, 594 (5th Cir. 1991).  "A complaint lacks an 'arguable basis in law' if it is based on an indisputably meritless legal theory' or a violation of a legal interest that does not exist."  *Ross v. State of Texas*, Civ. A. No. H-10-2008, 2011 WL 5978029, at *8 (S.D. Tex. Nov. 29, 2011).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents

attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"'[D]ocuments that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), *quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). By such attachments the defendant simply provides additional notice of the basis of the

suit to the plaintiff and aids the Court in determining whether a claim has been stated. *Id.* at 499. The attachments may also provide the context from which any quotation or reference in the motion is drawn to aid the court in correctly construing that quotation or reference. *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, No. H-04-0087, 2005 WL 3504860, at 11 n.20 (S.D. Tex. Dec. 22, 2005). "Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997), *citing Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When conclusory allegations and unwarranted deductions of fact are contradicted by facts disclosed in the appended exhibit, which is treated as part of the complaint, the allegations are not admitted as true. *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. Oct. 4, 2013), *citing Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974), *citing Ward v. Hudnell*, 366 F.2d 247 (5th Cir. 1966). *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, (7th Cir. 1996)("It is a well settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)(when attached documents contain statements that

contradict the allegations in the complaint, the documents control and the court need not accept as true the allegations contained in the complaint.").

**Allen's Motion to Remand (#14) and**

**Walmart's Objection to and Motion to Strike Joinder (#17)**

The Court first addresses together Allen's motion to remand and Walmart's objection to and motion to strike joinder because resolution of the two motions will determine whether the Court has jurisdiction to rule on the remaining motions.

Allen states that she originally filed this case in state court against Wal-Mart Stores Texas, LLC d/b/a WalMart Stores Texas 2007 d/b/a WalMart[7] on May 9, 2016 and requested service only on WalMart Stores Texas, LLC. Plaintiff also requested that, in lieu of effecting service, counsel for WalMart accept service, but she received no response. WalMart Stores Texas LLC was served with the petition by serving its registered agent of process on May 13, 2016. #14, Ex. 1. Allen reports that it did not respond to the state court service before the case was removed. On May 20, 2016 WalMart's counsel, Willie Ben Daw, III ("Daw"), "accepted service" on behalf of the "WalMart defendant named." Then WalMart Stores, LLC allegedly removed the case on diversity grounds to this Court

---

[7] Allen is a resident of the State of Texas, as is the Estate of Williams should it become a party. Wal-Mart Stores, LLC is a limited liability company formed under the laws of Delaware, with its principal place of business in Arkansas. #1, Notice of Removal, p. 2.

and filed the first motion to dismiss (#2) followed by an amended motion to dismiss (#3) for failure to state a claim.  On June 10, 2016 Allen filed her first federal complaint against WalMart Stores, LLC, Hutton, Mouton, Brewer-Winter, 3M, and IQ Products.

Allen argues that the entity that was sued and served (WalMart Stores Texas LLC) is not named in the Notice of Removal and therefore has no authority to confer jurisdiction on this Court. Moreover because the negligence and negligence per se[8] of several Texas citizens (newly named Defendant-employees of WalMart, i.e., Hutton, Mouton, and Brewer-Winter in Allen's first federal complaint) contributed to the death of Williams, diversity jurisdiction does not exist.  In *De Jongh v. State Farm Lloyds*, 555

---

[8] Allen argues that "'the unexcused violation of a statute setting a applicable standard of care,'" in this case Section 485 of the Health and Safety Code, which is designed to prevent injury to persons likely to abuse volatile chemicals, "'constitutes negligence as a matter of law if the statute is designed to prevent an injury to that class of persons to which the injured party belongs.'"  *El Chico Corp. v. Poole*, 732 S.W. 2d 306, 312 (Tex. 1987); *Southern Pacific Company v. Castro*, 493 S.W. 2d 491 (Tex. 1973)l *Johnson v, Sawyer*, 4 F.3d 368 (5th Cir. 1993).  The Texas Supreme Court has adopted the view of negligence per se in the *Restatement (Second) of Torts,* § 288B (1965):  "A person who gives a chattel to another, knowing the other person, due to youth, inexperience, or other factors, is likely to use the chattel in a manner involving unreasonable risk of harm to himself or others, may be held liable for harm caused by the use of the chattel."  *See Prather v. Brandt*, 981 S.W. 2d 801, 806 (Tex. App.--Houston [1[st] Dist.] 1998, pet. denied); *Rodriguez v. Spencer*, 902 S.W. 2d 37, 42 (Tex. App.--Houston [1[st] Dist.] 1995, no writ).  Williams appeared in WalMart in a clearly diminished capacity, reporting that she had experienced seizures and needed to buy clothes because of her vomiting and loss of her bodily functions.

Fed. Appx. 435, 437 (5th Cir. 2014), the panel stated,

> A non-party, even one that claims to be a real party in interest, lacks authority to institute removal proceedings. *See Salazar v. Allstate Tex. Lloyd's, Inc.,* 455 F.3d 571, 575 (5th Cir. 2006)("[W]here an entity has not properly been made a party in state court, removal jurisdiction cannot be premised on its presence in the action."); *Hous. Auth. of City of Atlanta, Ga. v. Millwood,* 473 F.2d 268, 272 (5th Cir. 1973)(holding that where removal is initiated by a non-party, the district court is without subject matter jurisdiction).[9]

While Wal-Mart Stores Texas, LLC was served on May 16, 2016, Daw accepted service for "WalMart Stores, LLC." Any ambiguity regarding service is resolved against the removing party, which bears the burden of establishing federal jurisdiction over the state-court suit. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 2001)("To determine whether jurisdiction is present for removal, we consider the claims in the state court petition as they existed at the time of removal. Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand.")(citations omitted); *Carpenter v. Wichita Falls Indep. Sch. Dist.,* 44 F.3d 362, 365 (5th Cir. 1995), *citing Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921). Naming some parties in the caption but not in the body of the

---

[9] This Court notes that while an action must be commenced against a defendant before he can remove it, a defendant need not have been served with process before he can remove a case from state court. *Delgado v. Shell Oil Co.,* 231 F.3d 165, 177 (5th Cir. 2000)(Title 28 U.S.C. § 1448 sets out a procedure for serving process "on any one or more of the defendants" after removal.).

petition does not make them parties to the action. *DeNina v. Bammel Forest Civic Club, Inc.*, 712 S.W. 2d 195, 196-97 (Tex. App.--Houston [14th Dist.] 1986, no writ). Thus neither WalMart Stores LLC nor WalMart Stores, Inc. was ever a party in the state court, insists Allen. The party that removed this action was a corporation, WalMart Stores, LLC), since it asserts its place of incorporation (Delaware) and principal place of business (Arkansas). The notice of removal, however, does not assert LLC citizenship (citizenship of all its members). This ambiguity or doubt about the name or the citizenship of the removing party should be resolved against removal. *Carpenter*, 44 F.3d at 365-66.

As for Allen's common law general negligence claim[10] against the individual WalMart-employee defendants, in deciding if the required legal duty for the tort exists courts examine the "risk, forseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transportation Co. v. Phillips*, 801 S.W. 2d 523, 525 (Tex. 1990).[11] Even without the

---

[10] A common law cause of action for negligence has three elements: a legal duty, breach of that duty, and damages proximately caused from that breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W. 2d 523, 525 (Tex. 1990).

[11] This Court notes that the Texas Supreme Court imposed this test on Yellow Cab after the jury found the Plaintiff "was not an employee." *Id.*

statute and/or *Restatement*, the common law duty would validate the negligence allegations, argues Allen. Here the "risk, foreseeability and likelihood of injury" are obvious, there is no social utility from the individuals' conduct, and placing the burden on the defendants would simply have them conform to basic human decency in dealing with severely mentally impaired individuals.

In sum, Allen insists that the removal of this case was defective because it was done by a corporation that was never sued or served in state court. In addition the federal complaint alleges claims against several Texas residents, each of whom has individual joint and several liability to Allen, also a Texas resident.

### Wal-Mart's Response to Motion to Remand (#19)

Wal-Mart rejects Allen's asserted two bases for remand: ((1) defective removal was by a non-party, Walmart Stores, LLC, not Wal-Mart Stores, Texas, LLC, and (2) the addition of new nondiverse defendants in the first federal complaint destroyed diversity.

Wal-Mart claims that Allen is attempting "to bootstrap an argument based on an ambiguity of names that Allen, herself, created in her original petition. An examination of the original petition reveals that Allen sues only one Defendant, but uses multiple names for that entity: "Walmart Stores, LLC" in the style; "Walmart" in her introductory paragraph; and "Wal-Mart

Stores Texas, LLC d/b/a Wal-Mart Stores Texas 2007 d/b/a Walmart"
in the second half of the second numbered paragraph.  In addition
and contrary to Allen's representation, she did not serve Wal-Mart
Stores Texas, LLC, but "Walmart," as evidenced by the certified
mail receipt (#14-2, Ex. 1) that Allen attached to her motion  and
by the citation on file with the state court.   In other words,
Walmart Stores, LLC is a misnomer and does not exist; originally
used by Allen as the name of her case, counsel for Defendant
answered using the same in the removal.   The party answering and
removing the suit was Wal-Mart Stores Texas, LLC.   There has always
been only one Defendant and it was correctly served.

The  Court  agrees  with  Wal-Mart.    "Courts  distinguish
misidentification from misnomer of defendants; "[w]ith a misnomer,
the correct party, although misnamed, is served with notice of the
suit. . . . This is in contrast to a misidentification, which
'arises when two separate legal entities actually exist and a
plaintiff mistakenly sues the entity with a name similar to that of
the correct entity." *De Jongh v. State Farm Lloyds*, 555 Fed. Appx.
435, 438 n.4 (5th Cir. 2014); *Chilkewitz v. Hyson*, 22 S.W. 3d 825,
828 (Tex. 1999).  A misnomer does not void the suit or judgment as
long as service has been made on the correct entity so that it was
put on notice.  *Brown v. Lanier Worldwide, Inc*., 124 S.W.3d 883,
894-95 (Tex. App.--Houston [14[th] Dist.] 2004).

Allen  argues  that  here  the  doctrine  of  improper  joinder

prevents a plaintiff from destroying jurisdiction by naming non-diverse defendants. *Salazar v. Allstate Tex. LLoyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006). Thus the addition of the nondiverse Defendants in the federal complaint require the Court to remand this case.

> The test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant.

*Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). It goes on to apply the fraudulent joinder test to the facts here.

In response, Wal-Mart first asserts that in her federal complaint, ***only after removal***, Allen joined Hutton, Mouton, Brewster-Winter, and IQ, all residing in Texas, in order to defeat diversity jurisdiction.

In response to Allen's motion to remand, Wal-Mart argues that Allen sued IQ and 3M because the two have been parties in similar action. *See* #19-1 emails between counsel for Defendants (Daw) and counsel for Allen (Jeffrey W. Steidley), in which Steidley wrote, I picked them [IQ and 3M] because they had been sued before with WalMart on duster cases. I just won't serve then if they are not involved." As noted, neither was served.

Furthermore Allen did not have a good faith belief that an IQ

product was used in this incident with Williams.  Allen was informed by WalMart's counsel that Falcon Safety Products ("Falcon") is the corporate entity that manufactures the Dust-Off purchased by Williams, not IQ *(See* #19, Ex. A, emails between Daw and Jeff Steidley, counsel for Allen), so Allen has no reasonable basis for recovery from IQ.

As for the claims asserted against the three individual WalMart employees, Allen concedes she is not certain which of the associates sold the product to Williams, so she sued all three because it is certain that one of them sold the inhalant and paraphernalia to Williams.  WalMart points out that they are all Texas residents and Allen does not have a good faith basis for joining them, but joined them simply to defeat diversity jurisdiction.

In addition WalMart maintains it can confirm that none of them is liable for selling anything to Williams.  Although Allen claims that these three employees had an individual common law duty not to sell Dust-Off to Williams, Wal-Mart maintains that under Texas law an employee cannot be held individually liable unless he breaches an independent duty of care to the injured party, a duty which is separate from his employer's duty.  *Leitch v. Hornsby*, 935 S.W. 2d 114, 117 (Tex. 1996)("A corporate officer or agent can be liable to others, including other company employees, for his or her own negligence.  However, individual liability arises only when the

-25-

officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.")[12]; *Gipson v. Wal-Mart Stores, Inc.*, Civ. A. No. H-08-2307, 2008 WL 4844206, at *5 (S.D. Tex. Nov. 3, 2008)("In Texas, an employee may not be held individually liable for breach of a legal duty unless she breaches an independent duty of care she owed to the injured party separate from her employer's duty.").  Hutton, Mouton, and Brewster-Winter did not owe Williams a duty of care independent of their employment with Wal-Mart. *Gipson v. Wal-Mart Stores, Inc.,* Civ. A. No. H-08-2307, 2008 WL 4844206, *5 (S.D. Tex. Nov. 3, 2008).  There is no duty to control the conduct of third persons absent a special relationship, such as employer-employee, independent contractor-contractee, parent-child. *Greater Houston Transp. Co. v. Phllips*, 801 S.W. 2d 523, 525 (Tex. 1990).  Even then, the existence of a special relationship is not controlling. *DeLuna v. Guynes Printing Co.*, 884 S.W. 2d 206, 208-10 (Tex. App.--El Paso 1994, writ denied)("Texas courts have been unwilling to enlarge the duty of employers to include situations where the employer either has no

---

[12] In *Leitch* the Texas Supreme Court concluded that the company's officers were not individually liable for the failure to supply a lifting belt or dolly to the plaintiff, a company employee who was injured when he lifted a sixty-five-pound reel of cable.  935 S.W. 2d at 116-18.  The high court determined that the employer had the exclusive and "nondelegable duty" to use ordinary care in providing its employee with a safe workplace and because the officer being sued for his negligence did not owe the employer this duty and did not breach any separate duty, the officer could not be held individually liable.

knowledge of the employee's condition or has not exercised control over the employee."). Allen has cited no case law that demonstrates a duty not to sell Dust-Off or similar products. The sources Allen relies on (*Restatement*, *Prather*) involved negligent entrustment, a cause of action which Texas Courts have refused to expand to sellers. *Nat'l Convenience Stores, Inc. v. T.T. Barge Cleaning Co.*, 883 S.W. 2d 684, 687 (Tex. App.--Dallas 1994, writ denied)("The Texas [negligent entrustment] cause of action does not hold a seller of a chattel under negligent entrustment.").

The Court agrees. *In accord, Triple R Auto Sales v. Fort Worth Transp. Authority,* No. 02-08-173-CV, 2009 WL 161039, at *1 (Tex. App.--Fort Worth, Jan 22, 2009), *citing Salinas v. Gen. Motors Corp.*, 857 S.W. 944, 948 (Tex. App.--Houston [1st Dist.] 1993, no writ), and *Rush v. Smitherman*, 294 S.W. 2d 873, 875-77 (Tex. Civ. App.--San Antonio 1956, writ ref'd)(The rationale for the rule is that a seller unlike a bailor in a bailment, lacks the ability to control a chattel once he sells it; "A bailor entrusts, for what he entrusts is his. But a vendor does not entrust; he sells his chattel.").

Even if the Court found that the employees knew or should have known of a common law duty not to sell the Dust-Off, it would be in their capacity as employees, not individually, insists WalMart. Were it not for their duties as WalMart employees, the employees would not be selling Dust-Off to Williams. Thus WalMart employees

did not owe an independent duty separate and apart from the duty Wal-Mart owed, so Allen cannot prevail on a negligence claim against the WalMart employees individually.  Here, too, the Court concurs.

Furthermore, WalMart contends that joinder of the employees is a futile attempt to defeat diversity because there is no duty arising from the violation of Chapter 485 of the Health and Safety Code, which is a penal statute and thus strictly construed, and therefore no private cause of action should be inferred under any provision of the Chapter.  *Brown v. Arturo De La Cruz*, 156 S.W. 3d 560, 565 (Tex. 2004)("By long standing precedent, a statute providing for a daily penalty unrelated to actual losses must be strictly construed, and may be asserted in a private cause of action only if the statute clearly so provides.").  The two statutes in the Health and Safety Code at issue here do not provide for a private cause of action.  In addition, nothing in Chapter 485 bars the sale of abusable volatile chemicals to adults, but only to minors, under section 485.032(a)(entitled, "Delivery to a Minor")("A person commits an offense if the person knowingly delivers an abusable volatile chemical to a person who is younger than 18 years of age.").[13]  Williams was twenty-four years old at

---

[13] Section 485.032 ("Delivery to a Minor") states, "(a) A person commits an offense if the person knowingly delivers an abusable volatile chemical to a person who is younger than 18 years of age," and then goes on to identify defenses to prosecution under the section.

the time of her death.   The only portion of Chapter 485.033 (entitled "Inhalant Paraphernalia) dealing with the sale of any products to adults is limited to sale of "inhalant Paraphernalia").[14]

_____

[14] Wal-Mart is correct that the relevant statutes in the Health and Safety Code are violations that do not, themselves, give rise to a civil private right of action.  Section 485.031(a)("Possession and Use"), a penal statute as Wal-Mart argues, provides,

> (a) A person commits an offense if the person inhales, ingests, applies, or possess an abusive volatile chemical with intent to inhale, ingest, apply, or use the chemical in a manner:
>
>> (1) contrary to directions for use, cautions, or warnings appearing on a label of a container of the chemical; and
>>
>> (2) designed to:
>>
>>> (A) affect the person's central nervous system;
>>>
>>> (b) create or induce a condition of intoxication, hallucination, or elation; or
>>>
>>> (C) change, distort, or disturb the person's eyesight, thinking process, balance or coordination.
>
> (b)  An offense under this section is a Class B misdemeanor.
>
> Section 485.033 ("Inhalant Paraphernalia") states,
>
> (a) A person commits an offense if the person knowingly uses or possesses with intent to use inhalant paraphernalia to inhale, ingest, or otherwise introduce into the human body an abusable volatile chemical in violation of Section 485.031.

Clearly Allen has no claim under § 485.032 for selling an abusive volatile chemical to adult Williams.  As for § 485.033, selling inhalant paraphernalia, Allen might have a claim except that she fails to meet the plausibility pleading standard under Rule 12(b)(6).  But Allen has conceded that she does not know which, if any, of the three WalMart employees or anyone else was the person who sold it to Williams.  Thus Allen has no plausible claim against Hutton, Mouton, and Brewster-Winter.  Again the Court agrees with WalMart.

Moreover, this Court observes that at times courts look to enactments by the Legislature to decide if a civil tort duty should be imposed on a statute, ordinance, etc.  *Praesel v. Johnson*, 967

---

(b) A person commits an offense if the person:

    (1) knowingly:

        (A) delivers or sells inhalant paraphernalia;

        (B) possesses, with intent to deliver or sell, inhalant paraphernalia; and

        (C) manufactures, with intent to deliver or sell, inhalant paraphernalia; and

    (2) at the time of the act described by Subdivision (1), knows that the person who receives or is intended to receive the paraphernalia intends that it be used to inhale, ingest, apply, use, or otherwise introduce into the human body a volatile chemical in violation of Section 485.031.

(c) An offense under Subsection (a) is a Class B misdemeanor, and an offense under Subsection (b) is a Class A misdemeanor.

S.S. 2d 391, 394 (Tex. 1998), *citing Nixon v. Mr. Property Management Co.*, 690 S.W. 2d 546, 549 (1985)(holding that a duty was owed to a rape victim based on a city ordinance that required property owners to secure the doors and windows of a vacant structure to prevent unauthorized entry). Usually, however, when they consider whether to use a statute for tort liability, a duty previously exits under common law, so the court turns to the statute to establish the specific standard of care. *Id., citing Parrott v. Garcia*, 436 S.W. 2d 897, 899-900 (Tex. 1969)("What, then, is the legal effect in a civil suit for damages of the violation by a plaintiff of a criminal statute? The statute itself does not say that civil liability or denial of damages should follow upon the violation of the statute. And this Court has held that not every violation of a criminal statute will result in a declaration of the Court that the violator is guilty of negligence (or contributory negligence) per se. . . . [N]ot every violation of a criminal statute results in negligence or contributory negligence per se. But where the Legislature, at least in instances where the conduct is substandard even in the absence of legislation, has declared that particular acts shall not be done, it fixes a standard of reasonable care for the community, and the deliberate, unexcused participation in the violation of the statute constitutes negligence or contributory negligence as a matter of law.").

"[F]undamentally, the application of proscriptions contained

-31-

in criminal statutes as standards for determining tort liability stems from the judicial action of courts and that the power of adopting or rejecting standards rests with the civil courts." *Praesel*, 967 S.W. 2d at 395.    "'[T]he mere fact that the Legislature adopts a criminal statute does not mean this court must adopt it as a standard for civil liability.'" *Id., quoting Carter v. William Sommerville and Son, Inc.*, 584 S.W. 2d 274, 278 (Tex. 1970), and citing *Rudes v. Gottschalk*, 324 S.W. 2d 201, 204-05 (Tex. 1959).  Courts "may borrow all, part, or none of a criminal statute as they deem appropriate for establishing a duty under civil laws." *Id. citing Rudes*, 324 S.W. 2d at 205.  In *Praesel* the Texas Supreme Court set out certain standards for deciding whether to establish civil tort liability based in criminal statues: (1) was the statute enacted to protect the class of persons to which the injured party belongs "'against the hazard involved in a particular case'"; (2) the charged conduct "'would be considered substandard even in the absence of [the] statute'"; and (3) "whether compliance with the statute would directly protect the class of persons to which the injured party belongs." *Id.*

    This Court notes that Allen has not cited, and this Court has been unable to find any court that created civil tort liability based on sections 485.031, 485.032, and/or 485.033 of the Texas Health and Safety Code, at issue in this suit.  Nor does the Court find it appropriate to impose a duty here based on 485.033 (a

person commits an offense if the person knowingly delivers or sells inhalant paraphernalia to a person he knows will use it to inhale a volatile chemical) when Allen has no certain identification of the seller to Williams.  Furthermore imposing a duty under 486.033 when there is no statute imposing a duty on the sale of the more dangerous inhalant would seem irrational.

Finally, WalMart highlights that Allen fails to allege that any employee had actual knowledge that Williams intended to use the towel she purchased to inhale volatile substances, no less identify one, so her negligence claim against the Wal-Mart employees and their joinder fails.

Related to Allen's motion to remand is WalMart's objection to and motion to strike joinder.

### Wal-Mart's Objection to and Motion to Strike Joinder of Hutton, Mouton, Brewster-Winter, and IQ (#17)

Reiterating arguments made previously, Wal-Mart insists there is no common law duty in negligence not to sell the product to Williams.  The general rule is that "'a defendant has no duty to prevent the criminal acts of a third party who does not act under the defendant's supervision or control.'"  *La Fleur v. Astrodome-Astrohall Stadium Corp.*, 751 F. S.W. 2d 563, 564 (Tex. App.--Houston [1ˢᵗ Dist.] 1988), citing *El Chico Corp. v. Poole*, 732 S.W. 2d 306, 313 (Tex. 1987).  "'An exception to this rule exists when the criminal conduct is the foreseeable result of a tortfeasor's

negligence.   In such a case, the defendant has a duty to prevent
injuries to others if it reasonably appears or should appear to him
that others in the exercise of their lawful rights may be injured
thereby.'"  *Id., citing id.* at 314.  *See also Nixon v. Mr. Property
Management Co., Inc.*, 690 S.W. 2d 546, 550 (Tex. 1985)(the act of
a third person in committing . . . a crime is a superseding cause
of harm . . . *unless the actor at the time of his negligence
conduct realized or should have realized the likelihood that such
a situation might be created, and that a third person might avail
himself of the opportunity to commit such a . . . crime* [emphasis
in original]."*)

Even if there were a duty of care imposed on one or more of
the three employees, it would arise due to their capacity as
employees, not individually, and, as noted, Allen could not recover
individually from the employees for such a claim.

Again Wal-Mart points out that Section 485 does not prohibit
the sale of Dust-Off to adults.  Therefore the employees could not
have knowingly violated the statute.   Thus disallowing Allen's
joinder of the three employees does not hurt Allen because the
employees were added solely to defeat diversity jurisdiction, not
for purposes of recovery.

Finally, IQ should not be joined because Allen was notified
that Dust-Off was the product in dispute and that Falcon, not IQ,
was the actual manufacturer of Dust-Off. #19-1.   Thus striking IQ,

which did not manufacture the product at issue, will not injure Allen.

### Allen's Response (#23) and Wal-Mart's Reply (#24)

Allen contends that Wal-Mart's motion to strike in essence complains of improper joinder.  Wal-Mart, therefore, as the removing party, bears the heavy burden of proving actual fraud in the pleading or an inability of the plaintiff to establish a cause of action against the non-diverse defendant in state court. *Smallwood*, 385 F.3d 574; *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531 (5th Cir. 2006).  There is no improper joinder unless "there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court." *Griggs*, 181  F.3d at 699.

WalMart correctly rejects this basic premise of Allen's response.  Because the parties were joined ***after*** the case was removed, not before, the standard of review is not the one for improper joinder, i.e., whether the new parties were fraudulently joined, but that the Court, when "confronted with an amendment to add a nondiverse nonindispensable party, should use its discretion in deciding whether to allow that party" to be joined. *Hensgens*, 833 F.3d at 1182.  As noted, the decision requires the Court to balance the equities of both sides.

> The district court, when faced with an amended pleading naming a new nondiverse defendant in a removed case, should scrutinize that amendment more closely than an ordinary amendment. . . . In this situation, justice

-35-

requires that the district court should consider a number
of factors to balance the defendant's interests in
maintaining the federal forum with the competing
interests of not having parallel lawsuits.  For example,
the court should consider the extent to which the purpose
of the amendment is to defeat federal jurisdiction,
whether plaintiff has been dilatory in asking for
amendment, whether plaintiff will be significantly
injured if amendment is not allowed, and any other
factors bearing on the equities.  The district court,
with input from the defendant, should then balance the
equities and decide whether amendment should be
permitted.  If it permits the amendment of the nondiverse
defendant, then it must remand to the state court.  If
the amendment is not allowed, the federal court maintains
jurisdiction.

*Id.*

Allen claims that a violation of Chapter 485 of the Health and
Safety Code by individuals is wrongful, as the language makes
clear.  Allen asserts that when a statute is designed to prevent
injury to the class of persons to which the injured party,
Williams, belongs, the unexcused violation of the statute is
negligence per se.  "Where the Legislature has declared that a
particular act shall not be done, it fixes a standard of reasonable
care, and an unexcused violation of the statute constitutes
negligence or contributory negligence is a matter of law."
*Missouri Pac. R. Co. v. American Statesman*, 552 S.W. 99, 103
(1977).  *See also Nixon v. Mr. Property Management Co., Inc.*, 690
S.W. 2d 546, 549 (Tex. 1985)(finding an "ordinance legislatively
imposes a standard of conduct which we adopt to define the conduct
of a reasonably prudent person.  The unexcused violation of a
statute or ordinance constitutes negligence as a matter of law if

such statute or ordinance was designed to prevent injury to the class of persons to which the injured party belongs.  A reasonable interpretation of this ordinance is that it was designed to deter criminal activity by reducing the conspicuous opportunities for criminal conduct." (citations omitted)).  Allen maintains that the class of persons primarily the subject of sections 485.031 and 485.033 of the Texas Health and Safety Code are people like Williams and establish negligence on the part of the WalMart employees.

Allen also contends that it is clear that the WalMart employees aided and abetted and substantially assisted Williams in her violation of the Health and Safety Code's criminal statutes and her self-destructive behavior.  "Anyone who commands, directs, advises, encourages, procures, controls, aids, or abets a wrongful act by another is regarded by the law as being just as responsible for the wrongful act as one who actually committed it." *Stein v. Meachum*, 748 S.W. 2d 516, 518-19 (Tex. App.––Dallas no writ). Nevertheless since the Court finds that the statutes should not be used here to establish a standard of conduct for a civil cause of action for negligence and negligence per se, there can be no aiding and abetting claim based on it.

WalMart accurately responds that *Meachum* and the other cases cited by Allen held that individuals were responsible for participating in ***an assault on a third person***.  Thus they are not

on point with the facts here since Williams was not assaulted by any of the WalMart-employee Defendants.  The Court agrees.

Last, Allen argues that a duty arises when a dangerous instrumentality is provided to an incompetent individual under circumstances where the seller knows about the recipient's incompetence.  Although Allen concedes that these cases do not apply to sellers, she again raises the *Restatement (Second) of Torts* § 390 (1965):  "A person who gives a chattel to another knowing the other person due to youth, inexperience, or other factors, is likely to use the chattel in a manner involving unreasonable risk of harm to himself or others, may be held liable for harm caused by use of the chattel." *See, e.g., Morin v. Moore*, 309 F.3d 316, 326 (5th Cir. 2002).[15]  Here, too, Allen argues, the sale of inhalant and paraphernalia to Williams, a person "obviously demented," of a chattel involving an unreasonable risk of harm is actionable.  She claims without any evidence that the individual Defendants knew of Williams' mental and physical incapacities and her inability without assistance to acquire abusable chemicals and paraphernalia, and that abuse of those chemicals could lead to injury or death.  These Defendants rendered her substantial assistance in acquiring and using the articles that killed her.

---

[15] WalMart points out that the *Morin* court held that an officer could be liable for negligently entrusting to his son, who he knew was a mentally unstable drug user, with an AK-47 assault rifle.

Ironically, Allen cites *Jaimes v. Fiesta Mart, Inc.*, 21 S.W. 3d 301, 204 (Tex. App.--Houston [1st Dist.] 1999, rev. denied) (providing that "a *supplier* of a chattel who knows it could endanger a youngster or inexperienced user is liable for harm resulting from the chattel's use"), to suggest there may exist an exception when there is no duty to make a sale.

WalMart correctly points out that not only does Section 390 not apply to sellers of products, but *Jaimes* emphasizes that "Texas courts have declined . . . to adopt section 390 and to impose this duty on sellers of chattles." *Id. at 304, citing Rush v. Smitherman*, 294 S.W. 873, 875 (Tex. Civ. App.--San Antonio 1956, writ ref'd n.r.e.)(also finding that examples of section 390 concern only bailments), and other cases, but the *Jaimes* court, itself, refused to impose a duty on the seller of balloons under Section 390 when a seller sold balloons to a child who choked and died as a result.

To Wal-Mart's conclusory claim that employees cannot be sued individually for breaches of duty where their employer has the same duty, Allen responds that there is established Texas law holding a corporate employee personally responsible for the tortious acts directed or participated in during employment. *See, e.g.*, *Miller v. Keyser*, 90 S.W. 3d 712, 717 (Tex. 2002); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W. 2d 369, 375 (Tex. 1984). Furthermore Allen's complaint alleges, alternatively, breaches of duty outside

the scope of employment, which only implicates individual
liability.  Allen insists that the employees of WalMart store had
to know that Williams, who went into the store at least nine times
in twenty-seven hours, deteriorating physically and mentally over
that time period, at times soiled, covered with vomit, urine, and
feces, was buying and using volatile chemicals and associated
paraphernalia in violation of Section 485 of the Health and Safety
Code, i.e., negligence per se. She then charges the WalMart
employees with actively "taking care" of Williams and thereby
assuming a duty to carry out that task with reasonable care,
without defining what constitutes "taking care" under the statute,
and complains that they failed to use reasonable care in performing
those services, increasing Williams' risk of harm.  She does not
explain how selling cans of inhalant and paraphernalia constitute
"taking care."  She does not cite any cases on point with the kind
of alleged "care" the employees purportedly provided to Williams,
nor does she specify how it was unreasonable.  She fails to state
a plausible claim.  Again, even if she did, the employees would
still not be liable individually because they sold these items as
employees of WalMart and had no independent duty to do so.

### Defendants Hutton, Brewer-Winter, and Mouton's

### 12(b)(6) Motion to Dismiss (#18)

The individual WalMart employees' motion conclusorily asserts
that the claims against them should be dismissed for failure to

state a claim because the complaint (1) fails to specify any legal duty they owe to Williams, (2) state facts showing how it was breached and identifying a plausible claim for relief, and (3) fails to specify a cause of action for damages.

Allen fails to respond, but has already done so to the same issues in other motions.  For the same reasons, it grants the three individual employees' motions to dismiss.

### WalMart's First Amended 12(b)(6) Motion (#16)

The Court has reviewed the motion, WalMart's brief in support (#20), Allen's brief (#21), and WalMart's reply (22) and concludes that WalMart is correct regarding Texas law and its application to the complaint's allegations here, much of which has already been addressed in this Opinion and Order.  At the same time, Allen's claims do not satisfy Rule 12(b)(6) pleading requirements.

WalMart moves to dismiss this action against it because Allen fails to specify the legal duty it owes to Williams to protect her from her own illegal acts, does not explain how that duty was breached, and fails to specify a cause of action for damages. WalMart argues, here too, in response to Allen's claim that WalMart provided abusive volatile chemicals to Williams in violation to Section 485.031 of the Health and Safety Code that Chapter 485 does not create private right of action in negligence for violations of the Chapter to any individual, as this Court has already discussed, and Allen fails to plead facts demonstrating that WalMart violated

any portion of Chapter 485.  Allen cannot recover damages because
WalMart had no duty to Williams under the common law.

The complaint's vague allegations that WalMart employees sold
a towel to Williams, which Allen conclusorily states could be used
as paraphernalia, and other inhalant paraphernalia without
specifying what that paraphernalia was or who sold it to her, do
not rise to the level required by *Twombly*.  Allen asserts no facts
showing that any employee had actual knowledge that the towel would
be used for inhalant paraphernalia that could be imputed to WalMart
for purposes of the statute.

Allen's negligence per se claim under Chapter 485, a penal
provision, fails, too.  As discussed, no duty of care was created
by the statute, nor is there any duty under Texas law to prevent
the criminal actions of a third person who does not act under the
defendant's (here WalMart's) supervision or control unless the
criminal conduct is a foreseeable result of WalMart's negligence.
*La Fleur*, 751 S.W. 2d at 564.  There is no duty to control absent
a special relationship between the actor and the third person, such
as employer employee.  *Phillips*, 801 S.W. 2d at 525; *DeLuna*, 884
S.W. 2d at 298.  Even then the existence of a special relationship
is not controlling.  *DeLuna*, 884 S.W. 2d at 209-10.  Thus Wal-Mart
had no duty to prevent Williams from inhaling the Dust-Off.

Allen has not cited any law establishing a duty not to sell
Dust-Off or similar products, while the law she does cite

(*Restatement (Second) of Torts* § 390 and cases like *Prather v. Brandt*) deal with negligent entrustment.  As discussed previously, Texas courts have refused to expand negligent entrustment to sellers of products because a seller, unlike a bailor in a bailment, lacks the ability to control a chattel once he sells it. While Allen concedes that the *Restatement (Second) of Torts* § 390 does not apply to sellers of products, she cites to *Jaimes v. Fiesta Mart, Inc*, 21 S.W. 3d 301, to suggest there may be an exception when there is a duty not to make a sale.  In fact, WalMart shows that the *Jaimes* court refused to impose a duty on the seller of balloons under § 390 when the seller sold balloons to a chile, who choked on them and died.

Allen argues that WalMart violated Chapter 485 of the Health & Safety Code because the container of Dust-Off was inhalant paraphernalia, as was the towel sold to Williams because it qualifies as "fabric" under Section 485.001(8)[16] of the Health & Safety Code § 485.001(8).  But Allen also alleges only one instance when Williams purchased a towel (and others when she "possibly" purchased more) and admits a towel has other uses.  More significant, she alleges no facts that support her claim that any

---

[16] Section 485.001(8) state, "'Inhalant paraphernalia' means equipment or materials of any kind that are intended for use in inhaling, ingesting, or otherwise introducing into the human body an abusable volatile chemical.  The term includes a tube, balloon, bag, fabric, bottle, or other container used to concentrate or hold in suspension an abusable volatile chemical or vapors of the chemical."

employee or WalMart had actual knowledge that Williams intended to use that towel to inhale volatile substances under Section 485.033. Under the same section the container holding the Dust-Off is part of the definition of "abusable volatile chemical" and under § 485.001(1)[17] must meet certain federal labeling requirements.  Thus the container cannot be paraphernalia.  Moreover Allen fails to state a claim based on any alleged violation of Chapter 485.

Allen claims that WalMart is responsible for selling an unreasonably defective product in violation Section 82.003(6) of the Texas Civil Practices and Remedies Code.  Under Section 82.003,

> (a) A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

> (1) that the seller participated in the design of

---

[17] Section 485.001(1) states,

(1)  "Abusable volatile chemical" means

(A) a chemical, including aerosol paint, that:

(i) is packaged in a container subject to the labeling requirements concerning precautions against inhalation established under the Federal Hazardous Substances Act (15 U.S.C. § 1261 *et seq.*) as amended, and regulations adopted under that Act and is labeled with the statement of principal hazard on the principal display panel "VAPOR HARMFUL" or other labeling requirement subsequently established under that Act or those regulations. . . ."

the product;

(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;

(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4) that

    (A) the seller exercised substantial control over the content of a warning or instruction that accompanies the product;

    (B) the representation was incorrect; and

    (C) the claimant's harm resulted from the inadequacy of the warning or instruction;

(5) that:

    (A) the seller made an express factual representation about an aspect of the product;

    (B) the representation was incorrect;

    (C) the claimant relied on the representation obtaining or using the product; and

    (D) if the aspect of the product had been as represented had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6) that:

    (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and

    (B) the claimant's harm resulted from the defect; or

(7) that the manufacturer of the product is:

(A) insolvent; or

(B) not subject to the jurisdiction of the court.

WalMart points out fatally that there is no claim in the complaint that the product was defective, nor facts showing that WalMart knew of any alleged defect, but only a vague, general statement about "danger inherent in the product sold." To show that WalMart may be liable under Section 82.003(7), Allen must plead facts showing that the manufacturer of the product is insolvent or not subject to the jurisdiction of the court under § 82.003(7), but she has done neither. Instead she maintains that it is "too soon to make a judgment on the applicability of Section 82.0003(7)." Because Allen has been informed that the product at issue is Dust-Off, she could easily have learned the correct manufacturer. Instead, because she failed in performing her due diligence to determine the correct parties, she should not be allowed to make vague allegations to overcome WalMart's motion to dismiss that do not satisfy *Twombly*. Thus the Court grants WalMart's motion to amend.

### Summary of Court's Decision

In sum, the Court dismisses 3M Company and IQ, still unserved and never having appeared, and not the manufacturers of the Dust-Off purchased by Williams. #12-1, emails. The removal was proper because the case was filed against a single, diverse Defendant, WalMart, for which Allen used various names in her Original

Petition.   The three WalMart employees, Hutton, Mouton, and Brewster-Winter are not individually liable for the claims asserted against them because they were acting on behalf of their employer, WalMart, and did not have an independent duty to do so.   The Court concludes that application of the equities test of *Hensgens* full supports not allowing the amended complaint to go forward.   Finally the Court grants WalMart's motion to dismiss because Allen's claims against the entity fail to satisfy pleading requirements of Rule 12(b)(6).

Accordingly, for the reasons stated above, the Court ORDERS that

(1) Allen's motion to remand (#14) is DENIED;

(2) WalMart motion to dismiss (#16) under Rule 12(b)(6) is GRANTED;

(3) WalMart's objection to joinder is sustained and its motion to strike joinder is GRANTED;

(4) Hutton, Mouton, and Brewster-Winder's motion to dismiss under Rule 12(b)(6) is GRANTED; and

(5) the Amended Complaint (#6) is DISMISSED.

SIGNED at Houston, Texas, this _14th_ day of _March_ , 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE